IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL J. PETERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:04-cv-844-WDS |
| | ) | |
| DARLENE VELTRI, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by Senior District Judge William D. Stiehl pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Petition for a Writ of Habeas Corpus filed by the Petitioner, Michael J. Peterson, on November 19, 2004 (Doc. 1), and the Motion for Summary Judgment filed by Peterson on August 4, 2005 (Doc. 11).  For the reasons set forth below, it is **RECOMMENDED** that the Respondent, Darlene Veltri be substituted by Mark Bezy, that the motion for summary judgment be **DENIED**, that the petition be **DISMISSED WITHOUT PREJUDICE**, and that the Court adopt the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

The Petitioner, Michael J. Peterson, seeks relief pursuant to 29 U.S.C. §2241 from the loss of 292 days of good conduct credit.  At the time of the incidents alleged in the petition, Peterson was housed at the Federal Correctional Institution (FCI), Greenville, Illinois.  Peterson currently is housed at the FCI Terra Haute, Indiana with a projected release date of August 24, 2006.  Federal Inmate Locator, http://www.bop.gov/iloc2/LocateInmate.jsp (using search by inmate name).

On November 18, 2003, an incident report (#1163739) was prepared by Assistant Warden Krueger in which he stated:

> Inmate Peterson . . . submitted a hand written letter to me . . . .  In this letter Inmate Peterson calls me such names as 'malicious one', 'putrid one', 'evil one', 'pompous puke', and 'idiot'.  Inmate Peterson has several references throughout the letter that have a threatening tone.  Inmate Peterson made threats such as 'If you don't comply with these demands, orders and decrees, then walk by my cell in complete silence', as if to say he will do something if I don't comply with his statement.  Inmate Peterson threatened to 'take action against the wrong that you have committed against me'.

(Petition, Ex. 1)

A hearing was held on this report on November 25, 2003 by a Discipline Hearing Officer (DHO) (Pet. Ex. 3).  At the hearing, Peterson admitted to writing the letter, but stated that while it was insolent, it was not threatening in nature (Pet. Ex. 3 at p. 1).  The hearing notes indicate that the incident report, the investigation, a letter from Peterson, and confidential information were used to render a decision (Pet. Ex. 3 at p. 2).  In finding that Peterson had committed the violations of threatening another with bodily harm (offense #203) and insolence towards staff (offense #312), the Disciplinary Hearing Report states that more weight was given to the staff members' statements than Peterson and that "your intention to avenge and your promise to take action against perceived wrongs committed against you by the report staff, including your intention not to tolerate any further 'vile deeds and threats' is interpreted as threatening in a correctional setting" (Pet. Ex. 3 at p. 2).  As a result of this finding, Peterson was sanctioned with 45 days of disciplinary segregation, loss of 41 days good conduct time, loss of 90 days good conduct time that had not vested, and 180 days loss of visiting (Pet. Ex. 3 at p. 3).  Peterson's appeal of this result was fruitless.

On November, 20, 2003, Sister Pat Dillon, the Chaplain, also submitted an incident report (#1164412). She reports:

> Inmate Michael Peterson . . . submitted a hand written letter to me . . . . Inmate Peterson threatened me in the letter by stating 'I further must seek punishment against you for the evil you have committed against Lopez, Hall, and myself.' 'Pat, in closing, I just wish to add that I can't wait to see you again in order to discuss your evil deeds against Hugo and Myself.' I perceive these statements to be a threat to my safety. Inmate Peterson went on in the letter to call me a 'jezebel and harlot.' These are both demeaning terms and the comments are insolent in nature.
>
> (Pet. Ex. 2).

At the subsequent disciplinary hearing, Peterson was found guilty of threatening bodily harm and insolence (Pet. Ex. 4 at p. 1). He lost 33 days good conduct time, placed on 61 days of disciplinary segregation, and he lost 120 days of non-vested good conduct time. Peterson's appeals of this result also were fruitless.

In his Petition before this Court, Peterson alleges that:

> 1. The Bureau of Prisons (BOP) violated its own regulations by disallowing 292 days of non-vested good conduct time.
> 2. His First Amendment rights were violated by punishment for protected speech.
> 3. BOP policies were violated because the incident reports were not timely written.
> 4. The incident reports were issued in retaliation for his refusal to change his religious preference in contravention of the directions of staff members.

The Respondent filed an answer on July 13, 2005 in which she argues that Peterson failed to exhaust administrative remedies. She also contends that Peterson has not shown a due process violation or any other Constitutional violation. On August 4, 2005, Peterson filed a one page motion for summary judgment in which he states that the Respondent had not filed an answer.

3

## CONCLUSIONS OF LAW

**Motion for Summary Judgment**

As stated above, the Petitioner seeks summary judgment because, the Petitioner contends, the Respondent did not file an answer. The Respondent did file an answer on July 13, 2005 (Doc. 9). As an answer was filed which challenges the contention that the Petitioner is entitled to immediate release, summary judgment is not warranted.

**Exhaustion of Administrative Remedies**

Peterson's §2241 Petition is governed by a common law exhaustion rule. Richmond v. Scibana, 387 F.3d 602, 604 (7th Cir. 2004). Federal regulations govern the manner in which an inmate is disciplined for violating various prison rules and how the inmate can appeal negative results. 28 C.F.R. §§541.10 – 541.23. After an initial hearing, an inmate may appeal the decision of a DHO to the "appropriate Regional Office" through the same administrative remedy procedures that other inmates use to appeal other adverse actions/decisions. 28 C.F.R. §§541.19, 542.15. In appealing the decision of a DHO, "an inmate may not raise in an Appeal issues not raised in the lower level filings . . . ." 28 C.R.R. §542.15(b)(2). A Regional Director is generally required to respond within 30 days of the filing of the appeal. 28 C.F.R. §542.18.

Peterson appealed the decision of the DHO on the first incident report (#1163739), prepared by Krueger, on December 2, 2003 (Pet. Ex. 5). In this appeal, Peterson asserted that a conviction for threatening and insolence based on the same incident violates the Double Jeopardy Clause (Pet. Ex. 5). He further contended that while the letter may have had a "threatening tone," no actual threat was communicated (Pet. Ex. 5). In response, the Regional Director, G. L. Hershberger, affirmed the DHO's findings and penalties on January 6, 2004 (Pet.

Ex. 5 at p. 3). Peterson filed a subsequent appeal to the General Counsel's Office, on January 20, 2004, because Director Hershberger did not address his double jeopardy claim (Pet. Ex. 6). In denying this subsequent appeal, Harrell Watts, the Administrator of the National Inmate Appeals, indicated on March 25, 2004 that the Double Jeopardy clause does not apply (Pet. Ex. 6 at p. 2).

Peterson also appealed the decision of the DHO on the second incident report (#1164412), prepared by Dillon, on December 14, 2003 (Pet. Ex. 5A at pp. 2-3). In this appeal, Peterson raised the same issues as above and also raised an issue concerning excessive penalties (Pet. Ex. 5A at pp. 2-3). This appeal also was denied by Director Hershberger on January 15, 2004 (Pet. Ex. 5A at p. 1). Peterson's February 1, 2004 appeal to the General Counsel's Office was returned to him, without consideration, because all copies of the form were illegible (Pet. Ex. 6A). There is no indication in the record that the General Counsel's Office considered the appeal any further.

The Respondent argues that the only claim that Peterson had exhausted was with respect to Krueger's incident report and only with respect to the claim that the Double Jeopardy clause was violated. The Respondent notes that Peterson did not complain about the punishment imposed, a First Amendment violation, a violation of BOP policies concerning the timeliness of the filing of the incident report, or his contention that the incident report was filed in retaliation. In addition, the Respondent argues that Peterson did not exhaust his administrative remedies with respect to the incident report filed by Dillon as he failed to submit his appeal to the General Counsel's Office.

It is within this Court's discretion to determine whether the Petitioner has exhausted his

remedies. Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004). This discretion is exercised by balancing "the individual and institutional interests involved" and by "taking into account the nature of the claim presented and the characteristics of the particular administrative procedure provided." Id (citation and quotation marks omitted). The Petitioner did not raise any of the issues, that he now raises in the instant petition, during any of the appeals that he submitted to the institution. It is clear that the Petitioner was aware of the administrative remedies that were available and that he had the option of appealing the decisions to the General Counsel's Office. The Petitioner nonetheless asserts in that he "used all available remedy procedures" (Pet. at p. 5).

The object of requiring an exhaustion of administrative remedies is to allow the institution to correct any errors prior to the matter being filed in Court. Such a procedure necessarily allows for a speedy resolution of any claims of error that an inmate can reasonably raise and the development of a factual record that can be reviewed. In this instance, the Petitioner did not raise any of the issues that he now raises before this Court. He did not allow the institution the opportunity to correct any or the errors that he raises or to develop a record. Such a record is necessary, especially with regard to the Petitioner's retaliation claim. As there is no showing that the Petitioner could not appeal these matter within the institution, he has wholly failed to exhaust his administrative remedies. As such, this Court must recommend that his claims be dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Petition for a Writ of Habeas Corpus filed by the Petitioner, Michael J. Peterson, on November 19, 2004 be

**DISMISSED WITHOUT PREJUDICE** (Doc. 1), and the Motion for Summary Judgment filed by Peterson on August 4, 2005 be **DENIED** (Doc. 11), that the Respondent, Darlene Veltri be substituted by Mark Bezy, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 15, 2006**

                                          **s/ Donald G. Wilkerson**
                                          **DONALD G. WILKERSON**
                                          **United States Magistrate Judge**